IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SOCORRO ALBERTY, et al.<br><br>**Plaintiffs**<br><br>v.<br><br>CARLOS "JOHNNY" MÉNDEZ, et al.<br><br>**Defendants** | **CIVIL NO.** 17-2385 (RAM) |

## MEMORANDUM AND ORDER

RAÚL M. ARIAS-MARXUACH, U.S. District Judge

Pending before the Court is Plaintiffs' *Motion in Compliance and Memorandum of Law* ("*Motion in Compliance*" or "*Motion*") in response to the Court's show cause order at Docket No. 100. (Docket No. 104). For the reasons set forth below, the Court **DISMISSES** Plaintiffs Socorro Alberty-Marrero, Margarita Jiménez-Bracero, Adalberto Pantojas-Fonseca, and Martha Rivera-López's First Amendment claim against Defendants.

### I.  BACKGROUND

Plaintiffs are 11 former termed employees of the Puerto Rico House of Representatives.[1] (Docket No. 38 ¶ 3). According to their

---

[1] Plaintiffs are Socorro Alberty-Marrero, Félix Arroyo-Molina, Margarita Jiménez-Bracero, Wanda Llópiz-Burgos, Bárbara Ocasio-Matos, Anitza Ortiz-Medina, Adalberto Pantojas-Fonseca, Noelia Ramos-Vázquez, Martha Rivera-López, María Sánchez-Soldevila, and Judith Soto-Calderón. (Docket No. 38 at 1).

*Amended Complaint*, they identify as members of Puerto Rico's Popular Democratic Party ("PDP"). Id. ¶ 4. Defendants are former Speaker of the House Carlos "Johnny" Méndez ("Méndez"); his wife Lisandra Maldonado ("Maldonado"); former Administrator of the House Moisés Cortés-Rosado ("Cortés-Rosado"); and former Human Resources Director for the House Karen Torres de la Torre ("Torres de la Torre"). Id. ¶¶ 20, 22, 23. Defendants Méndez, Cortés-Rosado, and Torres de la Torre belong to Puerto Rico's New Progressive Party ("NPP"). Id. Plaintiffs allege that during the 2016-2017 transition from a PDP to an NPP administration in the House of Representatives, Defendants violated Plaintiffs' First and Fourteenth Amendment rights by not renewing their employment contracts because of Plaintiffs' allegiance to the PDP. (Docket No. 38).

On November 15, 2019, Defendants filed a motion for summary judgment on the First Amendment claim, and on December 18, 2019, Plaintiffs filed the same.[2] (Docket Nos. 48 and 60, respectively). On February 6, 2023, this Court denied each motion for summary

---

[2] Neither party has filed a motion for summary judgment with regard to the due process claim. The motions at Docket Nos. 48 and 60 only seek summary judgment with respect to the First Amendment claim. *See* Docket Nos. 48 (only discussing Plaintiffs' First Amendment claim and making no mention of their due process claim) and Docket No. 60 (seeking partial summary judgment just on Plaintiffs' First Amendment claim). On February 6, 2023, this Court ordered Plaintiffs to show cause as to why their due process claim should not be dismissed for failure to state a claim upon which relief can be granted, since they do not appear to have a protected property interest in continued employment. (Docket No. 101). Plaintiffs filed a motion in compliance with that order on February 27. (Docket No. 103). After considering Plaintiffs' arguments therein, the Court dismissed their Fourteenth Amendment due process claim on May 19, 2023. (Docket No. 106).

Case 3:17-cv-02385-RAM   Document 108   Filed 06/21/23   Page 3 of 15

Civil No. 17-2385 (RAM)                                                3

judgment. (Docket No. 100). The Court denied Defendants' motion because it was premised on the theory that they were not yet officially in control of the House of Representatives, so they could not have been responsible for any adverse employment actions that Plaintiffs may have suffered during the transition of power from the outgoing PDP administration to the incoming NPP administration. Id. at 11-14. The Court found that Plaintiffs had proffered evidence that contradicted this theory and suggested that Defendants indeed played a role in the appointments process during the transition period. Id. Thus, summary judgment in favor of Defendants on the First Amendment claim **based on that theory alone** was not warranted.

The Court denied Plaintiffs' motion for summary judgment on the First Amendment claim because there are still material issues of fact barring summary judgment in their favor on that claim. Id. at 14-15. In fact, in reviewing the record cited in the summary judgment briefing, the Court questioned whether each Plaintiff had even made "a showing sufficient to establish the existence of [each] element essential to [his or her First Amendment] case, and on which [he or she] will bear the burden of proof at trial[,]" as required at the summary judgment stage. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Fed. R. Civ. P. 56(f) provides that courts may:

    (1)  grant summary judgment for a nonmovant;

> (2) grant the motion on grounds not raised by a party; or
>
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f). The Court thus notified Plaintiffs that it was considering granting summary judgment in favor of Defendants on some or all Plaintiffs' First Amendment claim unless they each made a showing sufficient to establish each element of his or her *prima facie* political discrimination claim. (Docket No. 100 at 15-16). In response to the Court's show cause order, Plaintiffs filed the present *Motion in Compliance* on February 28, 2023. (Docket No. 104). The *Motion* does not cite to any part of the record not previously cited in the summary judgment briefing. Id. The Court has reviewed these record citations in detail, both in adjudicating the motions for summary judgment and again in evaluating the present *Motion in Compliance*.

## II. LEGAL STANDARD

After discovery, summary judgment is appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to [his or her] case, and on which [he or she] will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A *prima facie* political discrimination claim under the First Amendment requires proving four elements: "(1) that the

plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Reyes-Orta v. P.R. Highway & Transp. Auth., 811 F.3d 67, 73 (1st Cir. 2016) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 13 (1st Cir. 2011)). A *prima facie* case for political discrimination may be built on circumstantial evidence. *See* Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004) (citations omitted). Two cases that Plaintiffs cite in their *Motion* exemplify this well. These two cases also indicate that the Celotex standard is a fairly low bar to a political discrimination claim.

The first case Plaintiffs cite is Rodriguez-Rios v. Cordero, 138 F.3d 22 (1st Cir. 1998). In that case, the First Circuit stated that "[a]lthough a highly charged political atmosphere alone cannot support an inference of discriminatory animus, [a] highly charged political atmosphere ..., coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus." Rodriguez-Rios, 138 F.3d at 24 (internal quotation marks omitted) (quoting Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993)). The plaintiff had provided evidence that the defendants were NPP activists and knew that the plaintiff was a prominent PDP activist. *See* id. Coupled

with the charged political atmosphere, the court was persuaded that this was enough to at least survive summary judgment. *See* id. The court noted that there was additional evidence to support plaintiff's claim – *i.e.*, that her responsibilities were reassigned to an NPP affiliate and that her office had recruited at least three new NPP members but no PDP members. *See* id. The panel also noted that the motivations behind the defendant's alleged "reorganization" were unclear. Id. at 25. **The First Circuit nevertheless stated that evidence of a highly charged political environment and that the plaintiff was a conspicuous target for political discrimination "would give [it] serious pause" "even standing alone[.]"** Id. at 24 (internal quotations omitted).

In the second First Circuit case cited by Plaintiffs, evidence suggesting that the defendant knew the plaintiffs' political affiliations, fired them without explanation, and replaced them with members of his own party was enough to survive summary judgment. *See* Montfort-Rodriguez v. Rey-Hernandez, 504 F.3d 221 (1st Cir. 2007). The defendant had asked his Assistant Secretary for Human Resources to compile a list of all trust employees. *See* id. at 223. The Assistant Secretary testified to assuming that all employees on this list, which included the plaintiffs, were appointed during the prior administration (*i.e.*, by the opposing party). *See* id. at 225-26. Given that the defendant had asked the Assistant Secretary to compile the list, the court thought it "fair

to infer" that the defendant shared the Assistant Secretary's assumptions about the trust employees on the list. Id. The court also noted that "quick terminations, with no attention to either job functions or performances, are strongly suggestive of pure political motivation." Id. at 227. The plaintiffs had even identified their replacements from the opposing party. See id. The court found that all of this evidence "render[ed] this case more circumstantial than speculative." Id. at 228 (citations omitted).

These cases show that making a circumstantial case for political discrimination that meets the Celotex standard is not a difficult task.

### III. DISCUSSION

Given the charged political environment in this case, as long as a Plaintiff has proffered **some** evidence to suggest that they belonged to the opposing political party (*i.e.*, the PDP), that their political affiliation was known to Defendants, and that they suffered an adverse employment action, their claim survives summary judgment. Some Plaintiffs, however, fail to clear this low bar. The Court first explains why Plaintiffs Alberty-Marrero, Jiménez-Bracero, Pantojas-Fonseca, and Rivera-López's First Amendment claims are dismissed. The Court then outlines why the remaining Plaintiffs' First Amendment claims survive summary judgment.

### A. Plaintiffs whose claims are dismissed

#### 1. Socorro Alberty-Marrero

Plaintiff Alberty-Marrero testified to being a member of the PDP. (Docket No. 60-4 at 1, 47). However, the record cited by Plaintiffs is completely devoid of any evidence (direct or circumstantial) that her affiliation was known or that she suffered political discrimination at the hands of anyone in the House of Representatives. More importantly, Ms. Alberty-Marrero resigned from her job, yet she proffers no evidence that would support a constructive discharge claim. (Docket No. 49-2 at 20-21).

#### 2. Margarita Jiménez-Bracero

Ms. Jiménez-Bracero testified to being a member of the PDP. (Docket No. 60-4 at 3). She provides some testimony that Defendant Méndez and others in the incoming administration knew of her political affiliation. Id. at 13, 17, 42-43, 45. However, Ms. Jiménez-Bracero also resigned, yet cited to no evidence in the record that would support a constructive discharge claim. (Docket No. 49-2 at 38).

#### 3. Adalberto Pantojas-Fonseca

Mr. Pantojas-Fonseca does not point to any evidence in the record – not even his own testimony – establishing his political affiliation. Therefore, he fails to proffer any evidence with regard to the first element of a political discrimination claim.

### 4. Martha Rivera-López

Ms. Rivera-López testified to being a member of the PDP. (Docket No. 60-4 at 9). However, the record cited by Plaintiffs is completely devoid of any evidence (direct or circumstantial) that her affiliation was known or that she suffered political discrimination at the hands of anyone in the House of Representatives.

Accordingly, Plaintiffs Alberty-Marrero, Jiménez-Bracero, Pantojas-Fonseca, and Rivera-López's First Amendment claim is dismissed for failure to make even a circumstantial case for political discrimination sufficient to meet the Celotex standard.

### B. Plaintiffs whose claims survive summary judgment

### 1. Félix Arroyo-Molina

Plaintiff Arroyo-Molina testified that he is a member of the PDP and that an employee named Zaida Raquel Seguillot told him that she mentioned his political affiliation to Defendant Méndez. Id. at 2, 50-51. Mr. Arroyo-Molina also stated in his deposition that the only two employees that his office dismissed were both PDP affiliates. (Docket No. 60-5 at 21). He seems to contradict himself by also stating that Ms. Seguillot from his office, a PDP member herself, was **not** fired. (Docket No. 60-4 at 52). However, weighing this contradicting evidence would require the Court to make credibility determinations reserved for a jury. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Finally, Mr. Arroyo-

Molina also testified that his office saw three new employees during this time, although he does not provide any evidence suggesting that these new employees were NPP affiliates. (Docket No. 60-5 at 22).

### 2. Bárbara Ocasio-Matos

Ms. Ocasio-Matos testified to being a "militant" of the PDP. (Docket No. 60-4 at 5). She also testified that Antonio Silva, the incoming Director for the House of Representatives, told her that he did everything in his power to keep her on, but that "from the Speaker's office they said no." (Docket No. 60-5 at 51).

### 3. Anitza Ortiz-Medina

Ms. Ortiz-Medina testified to being a member of the PDP. (Docket No. 60-4 at 6). In response to an interrogatory, she claims to have started working at the House of Representatives during a PDP administration. Id. at 59. She also claims to have been deposed in relation to another political discrimination case filed by NPP employees who were fired after the PDP won the 2012 election and to having disclosed her political affiliation during that deposition. Id.

In her interrogatory responses, she also states that everyone in the Administrative Office where she worked was affiliated with the PDP and that all but one were terminated. Id.; (Docket No. 60-5 at 24). She also reports having heard a rumor that some NPP

employees who were fired after the 2012 election were re-hired during the 2016-2017 transition. (Docket No. 60-4 at 59).

Though she resigned, Ms. Ortiz-Medina proffers some evidence to support a constructive discharge claim. She testified that José Fuentes, the outgoing PDP Administrator for the House of Representatives, told her that if she resigned, she would receive her severance payment faster instead of months in the future. (Docket No. 49-2 at 65).

   4. Noelia Ramos-Vázquez

Ms. Ramos-Vázquez testified to being a member of the PDP. (Docket No. 60-4 at 7). She purportedly worked as a PDP observer during the 2012 primaries and in "field operations and advance party" in a 2016 political campaign. Id. at 8. She allegedly told Defendant Méndez that she was hired during the Jaime Perelló PDP administration. Id. at 7; (Docket No. 60-6 at 24-25).

In her deposition, Ms. Ramos-Vázquez testified that Antonio Silva, the incoming NPP Administrator for the House of Representatives, told her that he wanted to keep her on as his secretary because he had heard that she did her job very well. (Docket No. 60-5 at 54). She said that when her contract was not renewed, Mr. Silva spoke with Defendant Moisés and that he appeared angry following that meeting because Mr. Moisés had decided that her contract would not be renewed. Id. at 54-55. She also testified that Mr. Silva and Mr. Orlando Morales (the outgoing Director of

Transportation) told her that the people who made this decision were Defendants Cortés and Maldonado. (Docket No. 60-6 at 8). Ms. Ramos-Vázquez also claims that after her contract expired, Mr. Méndez told her that he would get her a job "through ADT" and expedite her severance payment. (Docket Nos. 60-4 at 7; 60-6 at 21-24).

    5. <u>María Isabel Sánchez-Soldevila</u>

Ms. Sánchez-Soldevila claims to be a member of the PDP in response to an interrogatory. (Docket No. 60-5 at 31). She purportedly served as a PDP officer of the Permanent Registration Board for Loíza precinct 103 in 2019.[3] (Docket No. 60-4 at 10). Though she started working at the House of Representatives during an NPP administration, she claims that Defendant Méndez knew her and her PDP affiliation because of her active involvement in PDP politics. (Docket No. 60-5 at 31-32).

Ms. Sánchez-Soldevila also testified to having told Mr. Méndez about her contract's expiration and that he told her to continue following up. (Docket No. 60-6 at 16). She reports having had good job performance during her time in the House of Representatives. (Docket No. 60-5 at 31). She also stated in response to an interrogatory that people from "Nuno" Maldonado's (NPP) office came to work in her office after Plaintiffs were

---

[3] The Court notes that this would have been after the events giving rise to this lawsuit.

terminated and that other positions were filled by new employees, though she did not specify their political affiliation. Id. at 32.

    6. Judith Daniela Soto-Calderón

Ms. Soto-Calderón provides more extensive evidence that she was an active and visible PDP activist. (Docket No. 60-4 at 11, 19, 25, 30).

Ms. Soto-Calderón also asserts there was a "list of [NPP affiliate] directors who were being assigned to each office" and that those who kept their jobs or were hired during the transition period were NPP affiliates, though she provides no further details. Id. at 19.

    7. Wanda Llópiz-Burgos

Ms. Llópiz-Burgos provides substantial evidence to support her claim of political discrimination. She testified that she and other PDP employees in the Maintenance Office were told, "You have little time here," "You're all going to be fired," "Out is where you're going," "Jane Doe will be here now," "So-and-so are out," and "The lists are ready." (Docket No. 60-5 at 3, 27). She claims that Olga Mojica prepared a list of the office's PDP employees and that she was the first person on it. Id. at 3, 26-27, 29. She testified to personally seeing that list, titled "Populetes" (a derogatory term for PDP affiliates), because it was posted next to the office's microwave and switchboard "for everyone to see." Id.

at 28-29. She claims that everyone or almost everyone on that list was fired. Id. at 3, 28.

Furthermore, Ms. Llópiz-Burgos reports having received perfect evaluations during her tenure at the House of Representatives. (Docket No. 60-4 at 4). She claims to have questioned Mr. Quiles at the Sergeant of Arms office about why her contract was not renewed and that he told her, "Wanda, you know." Id.

Though the record is far from robust, Plaintiffs Arroyo-Molina, Ocasio-Matos, Ortiz-Medina, Ramos-Vázquez, Sánchez-Soldevila, Soto-Calderón, and Llópiz-Burgos proffer enough evidence to make their claims "more circumstantial than speculative." Montfort-Rodriguez, 504 F.3d at 228 (citations omitted). The remaining Plaintiffs, on the other hand, failed to "make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Plaintiffs Alberty-Marrero and Jiménez-Bracero did not provide any evidence that they suffered an adverse employment action; Plaintiff Pantojas-Fonseca did not point to any evidence that he belonged to the opposing political party; and Plaintiff Rivera-López failed to proffer even circumstantial evidence that she suffered political discrimination.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs Alberty-Marrero, Jiménez-Bracero, Pantojas-Fonseca, and Rivera-López's First Amendment claims are **DISMISSED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of June 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
